SENECA WIRE & MANUFACTURING
COMPANY, Plaintiff,

v.

AETNA LIFE INSURANCE
COMPANY, Defendant,

And Related Actions.

No. 3:95 CV 7601.

United States District Court,
N.D. Ohio,
Western Division.

May 7, 1997.

C. Philip Baither, III, Robison, Curphey &
O'Connell, Toledo, OH, for plaintiff.

Scott P. Sandrock, Sr., Darryl M. Kates,
Black, McCuskey, Souers & Arbaugh, Can-
ton, OH, for defendant.

C. Philip Baither, III, Robison, Curphey &
O'Connell, Toledo, OH, Ralph L. Diller, First
Allmerica Financial Life Insurance, Worces-
ter, MA, for First Allmerica Financial Life
Insurance Company aka State Mutual Life
Assurance Company of America aka DG Re-
insurance Underwwriters, Inc., third-party
defendant.

*MEMORANDUM OPINION*

KATZ, District Judge.

This matter is before the Court on multiple
motions for summary judgment. The rele-
vant facts are not in dispute. For the follow-

ing reasons, Plaintiff Seneca Wire & Manufacturing Company's motion for summary judgment against Defendant/Third–Party Plaintiff Aetna Life Insurance Company will be denied. Defendant/Third Party–Plaintiff Aetna Life Insurance Company's motion for summary judgment against Plaintiff Seneca Wire & Manufacturing Company will be granted. Defendant/Third–Party Plaintiff Aetna Life Insurance Company's motion for summary judgment against Third–Party Defendant First Allmerica Financial Life Insurance Company will be denied as moot. Third–Party Defendant First Allmerica Financial Life Insurance Company's motion for summary judgment against Defendant/Third–Party Plaintiff Aetna Life Insurance Company will be denied as moot.

### I. BACKGROUND

From March 1, 1984 to April 30, 1993, Plaintiff Seneca Wire & Manufacturing Company ("Seneca") and Defendant/Third–Party Plaintiff Aetna Life Insurance Company ("Aetna") were parties to a split-funded agreement concerning the provision and financing of health insurance benefits for Seneca's employees and their dependents (the "Agreement"). Under the Agreement, Seneca self-insured all medical claims up to a liability limit of $100,000 per covered individual per year. Aetna processed the claims for Seneca and was then reimbursed for those payments through bank transfers. Aetna also funded all claims above the first $100,000 of claims per person in a single year.

On March 17, 1993, Seneca notified Aetna it was terminating the Agreement effective May 1, 1993. Seneca then entered into similar stop-loss and claims processing arrangements with State Mutual Life Assurance Company of America ("State Mutual"), predecessor in interest to Third–Party Defendant First Allmerica Financial Life Insurance Company, and McDonough Caperton Benefit Services, Inc., which is not a party to this action. By letter dated April 22, 1993, Seneca notified Aetna that McDonough would be responsible for the processing of all "run-out" claims—claims incurred before the May 1, 1993 termination but not processed until after that date.

On April 3, 1993, the wife of a covered Seneca employee gave birth to premature twins, who incurred significant medical expenses. During April, 1993, Nicolas Long incurred medical expenses in the amount of $130,168 and Mitchell Long incurred medical expenses of $149,012, for a total of $279,180. From May to August, 1993, Nicholas Long incurred medical expenses in the amount of $155,311 and Mitchell Long incurred medical expenses of $193,144, for a total of $348,455. All of the medical bills were submitted for processing after May 1, 1993.

Aetna forwarded the Long twins' medical bills to McDonough for processing, but McDonough refused to process or pay the Long twins' bills. On September 16, 1993, Aetna processed and paid $604,609 on the Long twins' claims and then reimbursed itself in that amount from a Seneca bank account.

Subsequently, State Mutual paid $263,-368.28 to Seneca conditioned on Seneca pursuing its claim against Aetna and agreeing to a formula allocating Seneca's and State Mutual's participation in any recovery from Aetna.

Seneca then brought the instant action against Aetna for the Long twins' medical expenses, less the $100,000 liability limit for each twin. Seneca alleges that Aetna is responsible under the Agreement for the expenses incurred before May 1, 1993 because those expenses were incurred while the Agreement was still in full force. Seneca alleges that Aetna is responsible for the expenses incurred on and after May 1, 1993 because the plan booklet given to employees to explain their rights under the insurance plan guarantees employees basic medical expenses to a participant who is totally disabled for three months after the termination of coverage, and the twins were totally disabled.

Aetna brought a third-party complaint against State Mutual for indemnity. State Mutual has filed a counterclaim against Aetna for reimbursement of the $263,368.28 it paid to Seneca.

The matter is now before the Court on two sets of cross motions for summary judgment. Seneca and Aetna have each moved for summary judgment on the issue of Aetna's liabili-

ty for the twins' medical bills. Aetna and State Mutual have each moved for summary judgment on the issue of Aetna's right to indemnity. The Court discusses the parties' contentions below.

## II. SUMMARY JUDGMENT STANDARD

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. MOTIONS REGARDING AETNA'S LIABILITY

Seneca and Aetna each have moved for summary judgment on the issue of Aetna's liability. In determining the extent of Aetna's liability, the Court must address two questions. First, the Court must determine whether the agreement between Seneca and Aetna placed the ultimate responsibility for medical bills incurred *before* termination of the stop-loss agreement, but submitted *after* the termination of that agreement, on Seneca or Aetna. Second, the Court must determine whether the provision for ongoing disability benefits in the employee benefits handbook acts to place the responsibility for funding those benefits after the termination of the agreement on Aetna.

### A. Legal Standards for Construction of the Stop–Loss Agreement

The contract here at issue is governed by the laws of the state of Connecticut, pursuant to a choice of law provision contained in the Agreement. In Connecticut, an insurance policy is interpreted by the same general rules that govern the construction of any written contract. *Seymour Hammer v. Lumberman's Mut. Cas. Co.,* 214 Conn. 573, 573 A.2d 699, 703 (1990). While ambiguous terms in the insurance contract are construed against the insurer,

> The determinative question is the intent of the parties, that is, what coverage the plaintiff expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties.

*Id.* at 704 (internal quotations, citations, and ellipses omitted).

### B. Liability for Medical Expenses Incurred Before May, 1993

The first issue is whether Aetna is responsible to pay "run-out" claims incurred

before May 1, 1993 but not processed until after May 1, 1993. The following provisions of the written contract between Seneca and Aetna are relevant to disposition of this issue:

> 3. ... Any covered expenses incurred during the continuance of this Agreement as to which no benefits are paid while this Agreement is in force shall be governed by Paragraph 4(d) hereof.
>
> 4. (a) [Seneca] shall be liable for ... all Plan Benefits including Plan Benefits that become due prior to termination of the Agreement but that are not yet paid at termination. While the Agreement is in force, payments by [Seneca] for Plan Benefits will be subject to a maximum payment (hereinafter referred to as the Liability Limit.)

> \* \* \* \* \* \*

> (c) In no event shall [Seneca's] liability prior to termination of this Agreement ... with respect to any Participant in any calendar year exceed the [Liability Limit].
>
> (d) Following termination of this Agreement ... [Seneca] shall be liable for all claims for Plan Benefits paid ... after such termination without regard to any Liability Limit....

Conflating paragraphs (3) and (4)(d) produces the rule that, as to any run-out claims, "[Seneca] shall be liable for all claims for Plan Benefits paid ... without regard to any Liability Limit."

Despite this clear contractual language assigning liability for run-out expenses to Seneca, Seneca argues that paragraph 4(c) mandates assignment of the responsibility to pay run-out claims to Aetna because it states that "[i]n no event shall [Seneca's] liability ... with respect to any Participant in any calendar year exceed the [Liability Limit]." However, Seneca neglects a vital portion of that paragraph, the portion setting forth the temporal scope of the liability limit. Paragraph 4(c) limits Seneca's liability only "prior to termination of this Agreement." The issue at bar concerns Seneca's liability *after* termination of the Agreement, albeit as to claims incurred while the Agreement was still in force. The paragraph of the Agreement that addresses the parties' relative liabilities after termination of the Agreement as to claims incurred while the Agreement was still in force is paragraph (3), and that paragraph incorporates the rule that Seneca is liable for all claims paid without regard to any liability limit.

Since the claims incurred by the Long twins during April, 1993 were not processed or paid until after termination of the Agreement, Aetna is relieved of liability for those claims in their entirety. While this result may at first blush *seem* "harsh", it is in this Court's opinion mandated by the clear language of the contract.

## C. Liability for Medical Expenses Incurred on and After May 1, 1993

■ The Court's determination of the first issue is also dispositive of the second issue—whether the language of the employee benefits handbook which provides for ongoing disability benefits acts to place the responsibility for funding those benefits after the termination of the agreement on Aetna. The benefits handbook sets forth the rights participants have under their insurance plan, but is silent as to the entity with ultimate responsibility for payment of benefits. That responsibility is assigned in the contract between Seneca and Aetna; and that contract states that Seneca is responsible for payment of all claims after the termination of the Agreement. Since the expenses incurred on and after May 1, 1993 all arose after termination of the Agreement, Aetna has no responsibility to pay for those benefits. Aetna is relieved of liability for those claims in their entirety.

## IV. MOTIONS REGARDING AETNA'S RIGHT TO INDEMNITY

Aetna and State Mutual have each moved for summary judgment on the issue of Aetna's right to indemnity. Since the Court has determined, supra, that Aetna has no liability in this case, no right to indemnity will arise. Accordingly, those motions will be denied as moot.

**674**

### V. Conclusion

For the foregoing reasons, Plaintiff Seneca Wire & Manufacturing Company's motion for summary judgment against Defendant/Third–Party Plaintiff Aetna Life Insurance Company is denied. Defendant/Third Party–Plaintiff Aetna Life Insurance Company's motion for summary judgment against Plaintiff Seneca Wire & Manufacturing Company is granted. Defendant/Third–Party Plaintiff Aetna Life Insurance Company's motion for summary judgment against Third–Party Defendant First Allmerica Financial Life Insurance Company is denied as moot. Third–Party Defendant First Allmerica Financial Life Insurance Company's motion for summary judgment against Defendant/Third–Party Plaintiff Aetna Life Insurance Company is denied as moot.

IT IS SO ORDERED.